UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

National Union Fire Insurance Company of
Pittsburgh, PA; and Constance Insurance
Company,

Case No. 20-cv-1819 (WMW/TNL)

Plaintiffs,

**ORDER**

v.

Agility Fuel Solutions LLC,

Defendant.

---

Before the Court is Defendant's motion for judgment on the pleadings.  (Dkt. 75.)
Plaintiffs oppose the motion.   For the reasons addressed below, the Court denies
Defendant's motion.

## BACKGROUND

Plaintiffs are two insurers, National Union Fire Insurance Company of Pittsburgh,
PA (National) and Constance Insurance Company (Constance).  Plaintiffs issued policies
to Swagelok Company (Swagelok), a company that manufactures and sells fluid systems
for compressed natural gas (CNG), and San Diego Valve & Fluid Co, Inc. (SDVF), a
company that sells and distributes Swagelok products (collectively, Insureds).  Defendant
Agility Fuel Solutions LLC (Agility) is a California company that manufactures and sells
CNG fuel systems for vehicles.  McNeilus Truck and Manufacturing, Inc. (McNeilus), is a
Minnesota company that designs and manufactures refuse and ready-mixed concrete
trucks.

Agility made a CNG fuel system (CNG Unit) that it sold to McNeilus for use in one of McNeilus's refuse trucks. Swagelok designed and manufactured the hose system attached to the CNG Unit (Hose System), which SDVF subsequently assembled and sold to Agility. In 2015, SDVF sold and delivered the Hose System to Agility. Agility stored the Hose System for approximately one year in non-controlled conditions before shipping the Hose System and other component parts to McNeilus in late 2016. Before the shipment was sent, Agility did not inspect or test the Hose System. SDVF defectively assembled the connection of a hose that was part of the Hose System that Agility delivered to McNeilus.

Agility personnel performed annual inspections and evaluations of the McNeilus facility's manufacturing process from 2014 through 2019. The purpose of these inspections was for Agility personnel to ensure that the CNG Units were properly installed in McNeilus trucks. Agility also provided CNG Unit engineering support to McNeilus, which included onsite training and installation manuals. In late 2016 or early 2017, McNeilus installed the CNG Unit on a refuse truck and connected the Hose System to the CNG Unit and the other component parts.

On January 11, 2017, McNeilus painted the fully fueled truck and parked it in the Line 6 Bake Room (Bake Room) to allow the paint to cure and dry. The Bake Room was improperly ventilated. It also was not equipped to withstand explosions or to eliminate potential ignition sources, including CNG leaks. While the refuse truck was parked in the Bake Room, the CNG Unit in the truck leaked CNG and was exposed to dangerously high temperatures. An explosion and fire (Explosion) ensued and caused serious permanent injuries to several McNeilus employees (Injured Employees). Plaintiffs allege that,

because the CNG Unit lacked certain safety valves and controls, CNG leaked and caused the explosion.

After the Explosion, the Injured Employees sued Swagelok and SDVF, alleging negligence, strict liability and breach of warranty.  Swagelok and SDVF settled the Injured Employees' personal injury claims in 2019.  As part of the 2019 settlement, Plaintiffs compensated the Injured Employees and their representatives on behalf of Swagelok and SDVF.

Plaintiffs subsequently commenced this lawsuit against Agility to obtain contribution and equitable subrogation on a portion of the compensation Plaintiffs paid to the Injured Employees in the settlement of the Injured Employees' claims.  Plaintiffs allege that Agility breached its duty to design, manufacture, sell, and deliver the CNG Unit without defects; to warn of unreasonably dangerous and defective conditions; and to provide McNeilus with sufficient engineering support, training, evaluations, and instruction such that McNeilus would not have placed a fully fueled refuse truck in a facility not equipped to handle CNG leaks.  Plaintiffs allege that Agility knew McNeilus was assembling and finishing the refuse truck in an improper facility and that McNeilus was parking the fully fueled refuse truck in an unsafe location.  Plaintiffs contend that Agility knew that the dangerous temperatures combined with a CNG leak could cause an explosion.  Plaintiffs contend that Agility knew that any CNG leak in the Bake Room could cause an explosion and that Agility sold and delivered CNG Units without warning McNeilus that bringing trucks into the Bake Room was unreasonably dangerous.  Nor did Agility warn McNeilus that its manufacturing and assembly process violated industry

practices, safety standards and best practices, as well as Agility's recommended practices. Plaintiffs allege that, because of Agility's failure to warn, the CNG Unit was defective and unreasonably dangerous for its intended use. Plaintiffs also allege that Agility failed to store the Hose System in a suitable environment and either removed or negligently caused to be removed written warnings on the Hose System pertaining to proper use and care.

Agility seeks judgment on the pleadings and dismissal of Plaintiffs' complaint with prejudice.

## ANALYSIS

A party may seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Applying the same legal standard used to evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., a district court must determine whether a complaint states a facially plausible claim, s*ee Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). A district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions couched as factual allegations may be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although matters outside the pleadings generally may not be considered when deciding a motion to dismiss, a district court may consider documents necessarily embraced by the pleadings. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Materials are

necessarily embraced by the pleadings when a complaint alleges the contents of the materials and no party questions their authenticity, *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017), and the Court may consider such documents when deciding Agility's motion for judgment on the pleadings.[1]

Agility seeks judgment on the pleadings as to Plaintiffs' two counts: contribution and equitable subrogation.

## I.      Contribution (Count I)

The parties dispute whether Agility is entitled to judgment on the pleadings on Plaintiffs' contribution claim. Contribution is an equitable remedy that allows "one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear." *Roemhildt v. Gresser Cos., Inc.*, 729 N.W.2d 289, 298 (Minn. 2007) (internal quotation marks omitted). An injured party's failure to assert a formal claim against one joint tortfeasor does "not destroy the right of the other who made full payment to recover by way of contribution." *Zontelli Bros. v. N. Pac. Ry. Co.*, 263 F.2d 194, 199 (8th Cir. 1959); *accord Roemhildt*, 729 N.W.2d at 298 (explaining that "under the common law of contribution, the fact that one of the liable persons was not a party to a settlement is not an

---

[1]      Although Plaintiffs contend in their response to Agility's motion for judgment on the pleadings that Plaintiffs never reference the underlying settlement agreements in their amended complaint, that assertion is refuted by the text of Plaintiffs' amended complaint. Because Plaintiffs reference the settlement agreements in their amended complaint, both parties rely on the settlement agreements in their arguments, and it is undisputed that the settlement agreements filed by Agility are authentic, the settlement agreements between Swagelok, SDVF and the Injured Employees are necessarily embraced by the pleadings. *See Zean*, 858 F.3d at 526.

obstacle to contribution"). The elements of contribution are (1) "common liability of joint tortfeasors to an injured party" and (2) "the payment by one of the tortfeasors of more than his share of that liability." *Hart v. Cessna Aircraft Co.*, 276 N.W.2d 166, 168 (Minn. 1979); *accord Am. Auto. Ins. Co. v. Molling*, 57 N.W.2d 847, 851–53 (Minn. 1953) (surveying cases holding that contribution is premised on common liability between tortfeasors).

Here, Plaintiffs allege that Agility is jointly liable to the Injured Employees because Agility contributed to the Explosion by designing a defective product, failing to warn of unreasonably dangerous conditions, and failing to provide instructions and training sufficient to alert others to the danger of the product. Plaintiffs also allege that they paid more than their fair share of liability to settle the claims brought by the Injured Employees against Swagelok and SDVF. In so doing, Plaintiffs contend, they fully compensated the Injured Employees. Plaintiffs have alleged facts sufficient to support a contribution claim.

Agility counters that, to obtain contribution from Agility, Plaintiffs would have had to obtain a release of liability for Agility *before* settling the Injured Employees' claims. Plaintiffs disagree.

"The right to recover contribution is equitably limited by the extent to which the settling tortfeasor has relieved the other tortfeasor of its potential liability." *Rsrv. Ins. Co. v. Village of Big Lake*, 230 N.W.2d 47, 50 (Minn. 1975) (internal quotation marks omitted) (barring contribution when settlement agreement did not relieve the non-settling co-tortfeasor of potential liability). Two types of settlement releases are relevant here, a

*Pierringer* release and a general release.  The three basic elements of a *Pierringer* release are:

> (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.

*Frey v. Snelgrove*, 269 N.W.2d 918, 920 n.1 (Minn. 1978).  A general release, by contrast, "ordinarily discharges a plaintiff's entire cause of action."  *Bixler by Bixler v. J.C. Penney Co.*, 376 N.W.2d 209, 215 (Minn. 1985).

The settlement agreements between Swagelok, SDVF, their respective affiliated entities (Releasees), and the Injured Employees (Settlement Agreements) specifically release Releasees from claims arising from the Explosion.  The Settlement Agreements reserve to the Injured Employees the right to pursue workers compensation claims and reserve to McNeilus and its insurer the right to pursue subrogation against Releasees.  The Settlement Agreements release Releasees from the action and provide for the dismissal of the entire underlying action.  The Settlement Agreements neither reserve to the Injured Employees all claims against non-settling co-tortfeasors nor require the Injured Employees to indemnify the Releasees from any contribution claims.  For these reasons, Releasees' Settlement Agreements with the Injured Employees were not *Pierringer* releases and were instead general releases.

Having concluded that the Settlement Agreements were general releases, the determination required is whether the Settlement Agreements operate against the remaining co-tortfeasors. "[T]he factors determinative of whether a [general] release of one of several joint tortfeasors will operate to release the remaining wrongdoers should be and are: (1) The intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury." *Luxenburg v. Can-Tex Indus.*, 257 N.W.2d 804, 807 (Minn. 1977) (internal quotation marks omitted). [2] When viewed in the light most favorable to Plaintiffs, a reasonable fact-finder could conclude that the Settlement Agreements fully compensated the Injured Employees, Plaintiffs paid more than their fair share of the liability, and the parties to the Settlement Agreements intended those agreements to fully resolve the Injured Employees' claims. The Settlement

---

[2] Agility contends that a settling tortfeasor may not obtain contribution from a co-tortfeasor that was not specifically released from liability prior to the settlement with the injured parties. But the cases Agility cites in support of its argument are inapposite. Agility cites admiralty and maritime tort cases, areas of law explicitly governed by a proportionate liability framework for joint tortfeasors. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 210 (1994) (adjudicating admiralty action brought by crane owner regarding damage to crane and offshore platform deck); *Murphy v. Fla. Keys Elec. Coop. Ass'n, Inc.*, 329 F.3d 1311, 1312–13 (11th Cir. 2003) (addressing whether a contribution action following settlement of a maritime tort action requires the settling defendant to have obtained a release from liability for other potential defendants); *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 185 (5th Cir. 2009) (determining whether assignment of unliquidated personal-injury claims are permissible under federal maritime law); *Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 187 (5th Cir. 2009) (evaluating a claim assignment under the proportionate liability framework for general maritime tort law); *N. & S. Am. Shipping v. United States*, 352 F. Supp. 2d 734, 743–45 (E.D. La. 2005) (evaluating claims in light of the right of contribution between joint tortfeasors under maritime law). In addition, all but one of these cases are from other jurisdictions. Agility's arguments in favor of a proportionate liability framework are unpersuasive.

Agreements can be read to have released co-tortfeasors for injuries resulting from the Explosion.   For these reasons, the Court denies Agility's motion for judgment on the pleadings as to Plaintiffs' contribution claim.

## II.      Equitable Subrogation (Count III)

In a case brought by an insurer, "[s]ubrogation involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor)." *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn. 1997).   Equitable subrogation "depends on the equities and attending facts and circumstances of each case." *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1315 (8th Cir. 1991); *accord Am. Sur. Co. v. State Farm Mut. Auto. Ins. Co.*, 142 N.W.2d 304, 307 (Minn. 1966).   A party must establish the following elements to state an equitable-subrogation claim:

> (1) the payment was made by the subrogee to protect his own interests; (2) the subrogee did not act as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work an injustice to the rights of others.

*In re Tricord Sys., Inc.*, No. 04-1353 JRT, 2004 WL 2066817, at *5 (D. Minn. Aug. 27, 2004).   In light of the second factor, equitable-subrogation claims cannot be raised by a person "who pays without any obligation so to do, or one who, without any interest to protect, liquidates the debt of another."   *Emmert v. Thompson*, 52 N.W. 31, 32 (Minn. 1892).

It is undisputed here that Plaintiffs made the settlement payments to protect their Insureds' interests.   Plaintiffs allege that Agility—rather than Plaintiffs or the Insureds—

is the entity primarily liable to the Injured Employees.  According to Plaintiffs, they fully satisfied the Injured Employees' claims, and equitable subrogation would remedy the injustice of having compensated the Injured Employees for a proportion of damages that exceeds the damage for which the Insureds are liable.   Because Plaintiffs allege facts that are sufficient to state a plausible claim of equitable subrogation, the Court denies Agility's motion for judgment on the pleadings as to Plaintiffs' equitable-subrogation claim.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Agility Fuel Solutions LLC's motion for judgment on the pleadings, (Dkt. 75), is **DENIED**.

Dated:  August 2, 2022                                             s/Wilhelmina M. Wright
                                                                                Wilhelmina M. Wright
                                                                                United States District Judge